**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| ADAM FRANCO, | ) |
| Plaintiff, | ) ) ) |
| | ) Case No. 23-cv-14525 |
| v. | ) |
| | ) Judge Joan H. Lefkow |
| SYNTYNESE GRAY, CATHY SMITH, and CHERRYLE HINTHORNE, | ) ) ) |
| Defendants. | ) |

**OPINION AND ORDER**

Adam Franco brings this suit under 42 U.S.C. § 1983, alleging that individuals employed by the Illinois Department of Corrections, Syntynese Gray, Cathy Smith, and Cherryle Hinthorne, ("IDOC Officials") violated Franco's Eighth Amendment rights.[1] Franco alleges that IDOC Officials were deliberately indifferent to his complaints that he remained incarcerated beyond his lawful release date. Before the court is IDOC Officials' motion for summary judgment.[2] (Dkt. 31.) For the reasons stated below, the court denies IDOC Officials' motion.

**BACKGROUND**

In May 2017, Adam Franco was arrested for burglary in Cook County, Illinois.[3] Franco pleaded guilty on June 18, 2019. The same day, the court sentenced Franco to 4 years of

---

[1] Franco also brings an Eighth Amendment excessive force claim against defendant Shawn Thrush. (Dkt. 16 ¶¶ 55-60.) On May 29, 2024, the court granted Thrush's uncontested motion to sever the claim and transferred it to the Central District of Illinois. (Dkts. 27, 28.) Facts only relevant to Franco's claim against Thrush are not discussed.

[2] Federal subject matter jurisdiction is proper under 28 U.S.C. § 1343. Venue is proper under 28 U.S.C. § 1391.

[3] The parties' exhibits are not authenticated or accompanied by affidavits attesting to their admissibility. Nevertheless, "federal courts routinely consider unauthenticated documents on motions for summary judgment ... when it is apparent [ ] that such documents are capable of reduction to admissible, authenticated form." *Boyce* v. *Wexford Health Sources, Inc.*, No. 15 C 7580, 2017 WL 1436963, at *3 (N.D. Ill. Apr. 24, 2017) (citation omitted). The exhibits largely consist of records from the Illinois Department of Correction or Illinois Prisoner Review Board, and thus appear admissible at trial as business records. Fed. R. Evid. 803(6). The exhibits are otherwise judicially noticed. (Dkt. 32-1) (circuit court order); (Dkt. 32-2) (2019 version of Illinois statute); Fed. R. Evid. 201(b).

imprisonment, with credit for 240 days' time served, and one year of MSR. The typewritten order provided, "Defendant is ordered to serve 0001 years Mandatory Supervised Release." (Dkt. 32-1.) The circuit judge signed the order.[4]

At the time, Franco's burglary offense was a Class 2 felony carrying a statutory requirement of two years' mandatory supervised release ("MSR"). 720 Ill. Comp. Stat. 5/19-1(b); 730 Ill. Comp. Stat. 5/5-8-1(d)(2) (amended Dec. 2021). Franco was released from IDOC custody on MSR in September 2020.

On January 19, 2023, Franco was arrested pursuant to a warrant for a parole violation alleged to have occurred on April 20, 2021, and he was returned to IDOC custody. Franco served 228 days of MSR before committing the alleged violation.

Franco was held in custody at the Northern Reception and Classification Center ("NRC"). On February 10, 2023, Defendant Syntynese Gray, NRC Records Office Supervisor, calculated Franco's release date using an MSR term of two years and applied statutory sentence credit.[5] Gray determined Franco's release date to be September 26, 2023.

Franco was transferred from the NRC to Illinois River Correctional Center, and later to Pontiac Correctional Center. On July 20, 2023, two members of the Pontiac records office calculated Franco's sentence using a one-year MSR term and applied statutory sentence credit.

---

The parties' Local Rule 56.1 submissions also cite heavily to the pleadings. Generally, a party's Local Rule 56.1 statement "must represent admissible evidence." *Judson Atkinson Candies, Inc.* v. *Latini-Hohberger Dhimantec*, 529 F.3d 371, 382 (7th Cir. 2008). The court therefore relies only on those portions of the Local Rule 56.1 submissions that are admitted or uncontested. *See Horton* v. *City of Chicago*, No. 13-CV-6865, 2018 WL 6505398, at *6 (N.D. Ill. Dec. 11, 2018) (concluding that an admitted Local Rule 56.1 fact constitutes a judicial admission binding on the party and "has the effect of withdrawing from contention [that] fact").

[4] *People* v. *Franco*, 17-cr-1067702 (Cir. Ct. Cook Cty., June 18, 2019).

[5] Under Illinois law, recommitment is for "the total [MSR] term," subtracted by the time elapsed between the person's release and their commission of the violation causing MSR to be revoked. (Dkt. 42 ¶ 14) (quoting 730 Ill. Comp. Stat. 5/3-3-9(a)(3)(i)(B)).

The officials concluded that Franco's release date was March 26, 2023. Franco was released that day.

The parties have not yet conducted formal discovery. In his amended complaint, however, Franco alleges that while he was in custody at the NRC, he communicated to a grievance counselor that his release date had been miscalculated. The grievance counselor allegedly relayed his complaint to Gray, who responded that the facility to which Franco was to be transferred would handle the issue.

While at Illinois River, Franco allegedly communicated to the facility's records office that his release date had been miscalculated. Defendant Cathy Smith, Illinois River Records Office Supervisor, allegedly communicated to Franco "and/or [Franco's] grievance counselor" that he needed to raise his concerns with the parole board. Franco further alleges that he communicated to Defendant Cherryle Hinthorne, Illinois River Warden, that his release date had been miscalculated. Hinthorne allegedly failed to consult with either the Illinois River records office or main records office in Springfield, Illinois to ensure that Franco's claim was effectively investigated.

Franco brings this action against Smith, Gray, and Hinthorne in their individual capacities. He claims that each acted with deliberate indifference to his Eighth Amendment rights by failing to investigate effectively his complaints despite their awareness that he could have been incarcerated without penological justification. Hinthorne, Smith, and Gray move for summary judgment on two grounds: (1) Franco's claim is not justiciable under Article III of the Constitution because he has not suffered an injury in fact; and (2) each defendant is entitled to qualified immunity.

**LEGAL STANDARD**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Zaya* v. *Sood*, 836 F.3d 800, 804 (7th Cir. 2016) (quoting *Anderson* v. *Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). The party seeking summary judgment bears the burden of establishing that there is no genuine dispute as to any material fact. *Gray* v. *City of Evanston*, No. 23-CV-1931, 2024 WL 3495009, at *3 (N.D. Ill. July 22, 2024) (citing *Celotex Corp.* v. *Catrett*, 477 U.S. 317, 323 (1986)). The court construes all facts and reasonable inferences in favor of the nonmoving party. *Daugherty* v. *Page*, 906 F.3d 606, 609 (7th Cir. 2018).

**ANALYSIS**

**I.    Article III Standing**

IDOC Officials contend that Franco lacks standing to sue because he has not suffered an injury in fact. "The federal judiciary is empowered to decide 'Cases' and 'Controversies.'" *Fox* v. *Dakkota Integrated Sys., LLC*, 980 F.3d 1146, 1151 (7th Cir. 2020) (quoting U.S. CONST. art. III, § 2). A controversy exists if the plaintiff establishes that he has standing, which is "a legally cognizable interest, or personal stake, in the outcome of the action." *Genesis Healthcare Corp.* v. *Symczyk*, 569 U.S. 66, 71 (2013) (cleaned up and citations omitted). To establish standing, a plaintiff "must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Fox*, 980 F.3d at 1151 (quoting *Spokeo, Inc.* v. *Robins*, 578 U.S. 330, 338 (2016)).

4

The test for injury in fact is "whether the plaintiff has 'suffered an invasion of a legally protected interest that is concrete and particularized and actual or imminent, not conjectural or hypothetical.'" *Fox*, 980 F.3d at 1151 (quoting *Spokeo*, 578 U.S. at 339). At summary judgment, the plaintiff must "move beyond allegations and point to evidence establishing a concrete and particularized injury." *Gracia* v. *SigmaTron Int'l, Inc.*, 986 F.3d 1058, 1064 (7th Cir. 2021). Whether the one-year MSR term imposed by the circuit judge or the statutory two-year MSR applied to Franco's 2019 sentence determines whether Franco suffered such an injury. This is a question of state law. *See Armato* v. *Grounds*, 766 F.3d 713, 720 (7th Cir. 2014) (stating that the court "reviews the effect of an Illinois state judgment by looking to state law").

IDOC Officials contend that Franco's sentence should have been calculated using a two-year MSR term, as required by Illinois statute at the time. (Dkt. 33 ¶ 21; dkt. 42 ¶ 5); 730 Ill. Comp. Stat. 5/5-8-1(d)(2) (amended Dec. 2021). They argue that "every sentence automatically includes the correct MSR term by operation of law, regardless of what is expressly written in the sentencing order." (Dkt. 33 ¶ 18.) Properly applying a two-year MSR calculation, IDOC Officials contend, Franco should have been released on September 26, 2023, and thus "cannot establish standing because he has no injury in fact: He was released early from prison, not late." (*Id.* ¶ 15.)

Franco does not dispute that his sentence required a two-year MSR term under the Illinois statute. Rather, he responds that the circuit judge's order imposing a one-year MSR term is "merely voidable, not void, and carries full force and effect because no court with authority decided otherwise." (Dkt. 40 at 10-11.) Under Illinois law, "A void order is a complete nullity from its inception and has no legal effect." *Herrera* v. *Herrera*, 194 N.E.3d 1107, 1117 (Ill. App. Ct. 2021). On the other hand, "a voidable judgment shows from its record that it is valid, and will

remain valid unless and until its infirmity is established in a supplemental proceeding." *JoJan Corp.* v. *Brent*, 718 N.E.2d 539, 548 (Ill. App. Ct. 1999), *as modified* (Oct. 20, 1999).

Franco asserts that under Illinois law the appropriate method of invalidating his MSR sentence was to file a *mandamus* action with the Illinois Supreme Court. (Dkt. 40 at 9-10.) Since no one "challenged his sentence by the proper avenues," Franco argues the one-year MSR term remained in effect. (*Id.* at 9.) As such, Franco contends he was due for release on March 26, 2023, and was imprisoned "about four months past his correct release date," establishing an Article III injury in fact. (*Id.* at 3-4, 11.)

In *People* v. *Castleberry*, the Court revisited the common-law "void sentence rule," which provided that "a sentence which does not conform to a statutory requirement is void." 43 N.E.3d 932, 936 (Ill. 2015) (quotation omitted). The *Castleberry* Court explained that "whether a judgment is void or voidable presents a question of jurisdiction." *Id.* at 935 (quoting *People* v. *Davis*, 619 N.E.2d 750, 754 (Ill. 1993)). "Where jurisdiction is lacking," the Court reasoned, "any resulting judgment rendered is void." *Id.* (quotation omitted). A voidable judgment, on the other hand, is "one entered erroneously by a court having jurisdiction." *Id.* (quotation omitted).

The Court explained that a 1964 amendment to the Illinois Constitution "significantly altered" the scope of circuit court jurisdiction. *Id.* at 936 (quoting *LVNV Funding, LLC* v. *Trice*, 32 N.E.3d 553, 560 (Ill. 2015)). The amendment broadly granted circuit courts "original jurisdiction of all justiciable matters," excepting review of administrative actions. *Id.* (quoting *Trice*, 32 N.E.3d at 560; Ill. Const., art. VI, section 9). Given its general jurisdiction, the Court explained, a circuit court "need not look to the statute for its jurisdictional authority." *Id.* at 939 (quotation omitted). The Court thus abolished the void sentence rule as "constitutionally unsound." *Id.*

6

Following *Castleberry*, "a statutorily nonconforming sentence is not void; it is merely voidable and subject to the usual rules of forfeiture or other procedural restraints." *People* v. *Price*, 76 N.E.3d 1240, 1243 (Ill. 2016). Accordingly, "a reviewing court may no longer, *sua sponte*, correct a statutorily nonconforming sentence [and] the State … must seek a writ of *mandamus* to do so." *Id.* at 1244; *see also Castleberry*, 43 N.E. 3d at 940 (providing for *mandamus* "where it is alleged that the circuit court violated a mandatory sentencing requirement"); *People* v. *Miller*, 131 N.E.3d 1203, 1212 (Ill. App. Ct. 2019) (concluding, pursuant to *Castleberry*, that the appellate court had "no authority to find defendant's initial sentence void, and the trial court erred in resentencing defendant and imposing [statutorily mandated] enhancement, where his original sentence was not void").

*Castleberry* is controlling here. The Illinois Constitution confers general jurisdiction on circuit courts, with a limited exception for administrative actions. As such, the trial court had jurisdiction to impose Franco's sentence. *People* v. *Brown*, 49 N.E.3d 1004, 1006 (Ill. App. Ct. 2016) ("[T]he trial court obviously had jurisdiction to impose defendant's sentence, including the unauthorized MSR term."). As a result, Franco's one-year MSR term was voidable and could have been corrected via a writ of *mandamus*. *Price*, 76 N.E.3d at 1244. Because no one sought such relief, the sentence remained valid during his term of imprisonment.

IDOC Officials attempt to distinguish *Castleberry* by arguing that it "did not address MSR terms." (Dkt. 45 ¶ 17). While *Castleberry* involved the enforceability of a statutory sentencing enhancement, 43 N.E.3d at 934, IDOC Officials seem to overlook that *Castleberry* has been applied in the MSR context. *See, e.g.*, *Brown*, 49 N.E.3d at 1006 (concluding that defendant's sentence, including statutorily unauthorized MSR term, "is not void" under *Castleberry*). More fundamentally, a trial court's jurisdiction to impose sentences is

7

constitutional. ILL. CONST. 1970, art. VI, section 9; *Castleberry*, 43 N.E.3d at 938-39; *Brown*, 49 N.E.3d at 1006. Because a circuit court "need not look to the statute for its jurisdictional authority," IDOC Officials' efforts to distinguish *Castleberry* on a statute-by-statute basis ring hollow. *Castleberry*, 43 N.E.3d at 939 (quotation omitted).

IDOC Officials also urge the court to disregard *Castleberry* and apply a separate line of Illinois Supreme Court cases. *See People* v. *McChriston*, 4 N.E.3d 29 (Ill. 2014); *Round* v. *Lamb*, 90 N.E.3d 432 (Ill. 2017). They contend that *McChriston* and *Lamb* stand for the principle "that MSR terms are statutorily mandated and not subject to judicial discretion." (Dkt. 45 ¶ 13.) Applying these cases, IDOC Officials argue, "the correct MSR term applies by operation of law, regardless of the sentencing order's content." (*Id.* ¶ 20.)

IDOC Officials' theory is unavailing. Both cases, unlike this case, interpreted the MSR statute in the absence of an explicitly-imposed MSR term. In *McChriston*, the trial order did not specify an MSR term and the trial judge failed to mention MSR at the sentencing hearing. 4 N.E.3d at 31. Similarly, in *Lamb*, MSR was not mentioned during plea negotiations, sentencing, or in the written sentencing order. 90 N.E.3d at 434. While the Court in both cases applied the statutory MSR period, *id.* at 437; *McChriston*, 4 N.E.3d at 35, neither construed the MSR statute to empower IDOC to overrule judges who affirmatively impose such terms.[6]

IDOC Officials minimize this distinction, but it is reflected in *Lamb*, *McChriston*, and the MSR statute's legislative history. The *Lamb* Court explained that an amendment to the MSR statute required judges to enter the term of MSR so IDOC would not have to request the correct

---

[6] The court is unpersuaded by IDOC Officials' reliance on several other cases that predate *Castleberry*, which is the controlling authority. *People* v. *Whitfield*, 840 N.E.2d 658 (Ill. 2005); *People* v. *Brown*, 695 N.E.2d 1374 (Ill. App. Ct. 1998); *People* v. *Ford*, 18 N.E.3d 88 (Ill. App. Ct. 2014); *People* v. *Jackson*, 974 N.E.2d 855 (Ill. App. Ct. 2012).

term from the courts. 90 N.E.3d at 437 ("[T]he [amendment] would … require judges to enter the specific length of parole that each inmate needs to spend after their sentence's [*sic*] done … They're not required to do that right now, [which] creates confusion sometimes at intake for [IDOC], and they have to contact a sentencing judge … to make sure they enter the right parole information.") (quoting 97th Ill. Gen. Assem., House Proceedings, May 17, 2011, at 48). The *McChriston* Court relied on the same legislative history in interpreting the older version of the statute. *See* 4 N.E.3d at 34-35.[7]

Here, the circuit judge imposed a one-year MSR period and had jurisdiction to do so. *Brown*, 49 N.E.3d at 1006. Disregarding this express MSR term therefore requires concluding that the trial court is "*incapable* of issuing an MSR term" that does not comply with the statutory requirement. *People v. Barrett*, 2017 IL App (2d) 140948-U, 2017 WL 1078607, at *6.[8] That conclusion cannot be squared with the court's jurisdictional power to impose such sentences and works a "backdoor attempt to resurrect the discredited void sentence rule." *Id.* After *Castleberry*, this type of challenge is "no longer valid." *People* v. *Thompson*, 43 N.E.3d 984, 991 (Ill. 2015).

IDOC Officials also downplay the one-year MSR term as a "clerical error," relying on *People* v. *Fukama-Kabika*, 234 N.E.3d 50 (Ill. 2023). (Dkt. 45 ¶ 17.) In *Fukama-Kabika*, the Court concluded that a trial court retains jurisdiction to correct clerical errors in written sentencing orders and that in such cases, *Castleberry* does not apply. 234 N.E.3d at 56. The

---

[7] The same reasoning applies to *People* v. *Viverette*, 54 N.E.3d 944, 951-52 (Ill. App. Ct. 2016), *as modified* (June 14, 2016) (applying *McChriston* and referencing the same legislative history to conclude that MSR is part of every qualifying sentence regardless of whether "the term is mentioned during sentencing or omitted from the sentencing order").

[8] IDOC Officials' request that the court disregard and strike Franco's citation to *Barrett* is denied. (Dkt. 45 ¶ 19.) Illinois Supreme Court Rule 23(e) "only bars parties from citing ... unpublished decision[s] *as authority*"—it does not preclude parties "from using the reasoning and logic from such decisions nor does it prevent courts sitting in other jurisdictions from citing ... unpublished orders in their dispositions." *Litterer* v. *United States*, 545 F. Supp. 3d 625, 635 n.2 (N.D. Ill. 2021) (cleaned up).

distinction between clerical and judicial errors depends on "whether [the error] was the deliberate result of judicial reasoning and determination." *Id.* at 54 (quotation omitted).

IDOC Officials point to no evidence suggesting that Franco's sentence lacked deliberation. In fact, the evidence implies the contrary: while the MSR term is typewritten, the circuit judge appeared to hand-sign the typewritten Order. (Dkt. 46 ¶ 3; dkt 32-1); *see Barrett*, 2017 WL 1078607, at *6 (reasoning that the combination of a computer-generated sentencing order and manual signature "bears the mark of purposeful input").

Finally, IDOC Officials claim that Franco's theory, "if accepted, would place an untenable burden on the IDOC and Defendants. It would force the agency to choose between potentially violating inmates' constitutional rights (by enforcing statutorily mandated MSR terms) and failing to fulfill its statutory obligations." (Dkt. 45 ¶ 22.) *Castleberry*, however, resolves the confusion that IDOC Officials describe. Giving effect to judgments within a circuit court's jurisdiction is "consistent with the policy of preserving the finality of judgments" and protects against an "unwarranted and dangerous expansion of the situations where a judgment may be set aside on a collateral attack." *Castleberry*, 43 N.E.3d at 938 (quoting *Trice*, 32 N.E.3d at 562).[9]

There is no evidence suggesting that either party sought *mandamus* to correct Franco's one-year MSR term, and the record is undisputed that IDOC Officials released Franco from

---

[9] IDOC Officials also maintain that Franco has not suffered an Article III injury "under section 1983 tort principles." (Dkt. 45 ¶ 23) (citing in part *Wells* v. *Caudill*, 967 F.3d 598, 602 (7th Cir. 2020) ("[O]ne of the best-established propositions in federal constitutional law is that an error of state law is not properly rectified by deeming that error a constitutional tort.")).

This argument conflates distinct legal principles. The inquiry here is merely whether Franco has established a triable issue of fact as to Article III standing, not whether he has stated an Eighth Amendment claim under Section 1983. *See Leslie* v. *Medline Indus., Inc.*, No. 20-CV-01654, 2021 WL 4477923, at *7 (N.D. Ill. Sept. 30, 2021) ("[A]ny lack of a cause of action … does not mandate a finding of no injury-in-fact for purposes of Article III standing.").

prison on July 20, 2023. (Dkt. 42 ¶ 21.) The parties also do not dispute that Franco's release date was March 26, 2023, when calculated with a one-year MSR term. (Dkt. 46 ¶ 8; dkt. 41-2.) Franco has thus established that he has suffered an injury in fact. *See Conley* v. *United State*s, 5 F.4th 781, 786-87 (7th Cir. 2021) (explaining that when challenging a conviction, incarceration "constitutes a concrete injury") (quoting *Spencer* v. *Kemna*, 523 U.S. 1, 7 (1998)). The court therefore denies IDOC Officials' motion for summary judgment as to Article III standing.

## II. Qualified Immunity

IDOC Officials next argue that they are entitled to summary judgment on qualified immunity grounds. Franco urges the court to defer ruling on qualified immunity because "the parties stipulated in front of the court that they would only brief the injury in fact issue." (Dkt. 40 at 11.) IDOC Officials respond that "the record would speak for itself." (Dkt. 45 ¶ 26.) Franco has not pointed to any evidence corroborating such a stipulation. To the contrary, IDOC Officials pleaded qualified immunity as an affirmative defense in their answer. (Dkt. 26 at 14.) Either way, the issue can be fully addressed as presented here and, if discovery is needed to resolve the issue, the court may so order.

Qualified immunity "protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson* v. *Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow* v. *Fitzgerald*, 457 U.S. 800, 818 (1982)). Qualified immunity is more than a "mere defense to liability" and rather provides "*immunity from suit*." *Smith* v. *Finkley*, 10 F.4th 725, 737 (7th Cir. 2021) (quoting *Mitchell* v. *Forsyth*, 472 U.S. 511, 526 (1985)). The Supreme Court has thus "repeatedly … stressed the importance of resolving immunity questions at the earliest possible stage in litigation." *Doe* v. *Vill. of Arlington Heights*, 782 F.3d 911, 915-16 (7th

Cir. 2015) (quoting *Saucier* v. *Katz*, 533 U.S. 194, 201 (2001)); *Crawford-El* v. *Britton*, 523 U.S. 574, 598 (1998).[10]

At this stage, the court should determine whether IDOC Officials' alleged conduct, assumed to be true, violated a clearly established constitutional right. *Crawford-El*, 523 U.S. at 598; *see also Sanchez* v. *Bremer*, No. 8:11-CV-314, 2012 WL 1396879, at *5 (D. Neb. Apr. 23, 2012) (denying objection to magistrate judge's order providing, "The defendants have moved for summary judgment, claiming the facts as alleged by the plaintiff do not support a claim that the defendants violated plaintiff's clearly established constitutional rights. This analysis can proceed … based on the plaintiff's allegations alone."). State officials are protected by qualified immunity "unless the plaintiff shows: (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Reed* v. *Palmer*, 906 F.3d 540, 546 (7th Cir. 2018) (quotation omitted). An official is entitled to qualified immunity if either inquiry is answered in the negative. *Id.*

### A. Complaint Allegations

Franco alleges that Gray miscalculated Franco's release date because she used a two-year MSR term, rather than the one-year term imposed by the circuit judge. (Dkt. 16 ¶ 23.) While at the NRC, Franco communicated to a grievance counselor that his release date was miscalculated, and the grievance counselor relayed the complaint to Gray. (*Id.* ¶¶ 24-25.) Gray responded that the facility to which Franco was to be transferred would handle the issue. (*Id.* ¶ 26.) Franco

---

[10] Accordingly, when a defendant pleads qualified immunity, the court "should resolve that threshold question before permitting discovery." *Crawford-El*, 523 U.S. at 598. "To do so, the court must determine whether, assuming the truth of the plaintiff's allegations, the official's conduct violated clearly established law." *Id.* This rule is not absolute. *Crawford-El* dealt with whether a §1983 plaintiff must plead clear and convincing evidence of an official's improper motive so the issue of qualified immunity could be decided based on the pleadings. The Court held that the plaintiff did not. To address the policy of minimizing the burden on the defense, however, the Court advised that a district judge could order a "focused deposition" bearing on the qualified immunity defense or defer the issue of motive until it decides whether the plaintiff had suffered any injury or engaged in protected conduct. *See id.* at 599.

alleges that Gray was deliberately indifferent "because she did not investigate and/or effectively investigate [Franco's] claim that his release date was miscalculated, even though she knew that there was a risk that he may be incarcerated for longer than he should be without penological justification." (*Id.* ¶ 27.)

Franco next alleges that while he was in custody at Illinois River, he communicated to the facility's record office that his release date was incorrect. (*Id.* ¶ 29.) In response, Smith "communicated to [Franco] and/or [Franco's] grievance counselor that he needed to bring his concerns to the attention of the parole board." (*Id.* ¶ 30.) As with Gray, Franco alleges that Smith "did not investigate and/or effectively investigate [Franco's] claim that his release date was miscalculated, even though she knew that there was a risk that he may be incarcerated for longer than he should be without penological justification." (*Id.* ¶ 31.)

Finally, Franco allegedly "communicated" to Warden Hinthorne that his release date had been miscalculated, but Hinthorne nonetheless "did not consult with the facility's record office and/or the main record office in Springfield to ensure that his claim was investigated and/or effectively investigated." (Dkt. 16 ¶¶ 32-33.)

## B. Constitutional Violation

Detention beyond a person's lawful release date "violates the Eighth Amendment if it is the product of deliberate indifference." *Figgs* v. *Dawson*, 829 F.3d 895, 902 (7th Cir. 2016). "Deliberate indifference requires more than negligence or even gross negligence; a plaintiff must show that the defendant was essentially criminally reckless, that is, ignored a known risk." *Id.* at 903. State officials are deliberately indifferent when they do nothing, or when they take action "that is so ineffectual under the circumstances that deliberate indifference can be inferred." *Id.*

13

Franco alleges that both Gray and Smith were individually aware that his release date could have been miscalculated but each nevertheless failed to investigate the issue effectively. This is sufficient to allege a deliberate indifference claim. *See, e.g.*, *Vernon* v. *McGlone*, 670 F. Supp. 3d 648, 655 (N.D. Ill. 2023) (denying motion to dismiss deliberate indifference claim against prison records office supervisor where she allegedly failed to address plaintiff's complaint about the error in his release date). Similarly, Franco alleges that Hinthorne was personally aware that his release date could have been miscalculated but failed to consult with either the Illinois River records office or main IDOC records office in Springfield. This, too, is sufficient. *See Schneider* v. *Cnty. of Will, Ill.*, 528 F. App'x 590, 594-95 (7th Cir. 2013) (holding that a jury reasonably could conclude that warden acted with deliberate indifference where he received a letter from plaintiff complaining of over-detention and consulted with records supervisor, but took no further action in response); *see also Vernon* v. *Elberson*, No. 22 C 4890, 2024 WL 216665, at *2 (N.D. Ill. Jan. 20, 2024) (denying motion to dismiss deliberate indifference claim where plaintiff alleged that the warden denied his grievance regarding over-detention "without consulting prison or IDOC record office"). The court therefore concludes that Franco has alleged a constitutional violation as against Gray, Smith, and Hinthorne.

### C. Clearly Established Law

The court must next determine whether Franco alleges that an IDOC Official violated "clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson*, 555 U.S. at 231 (quotation omitted). "The law is clearly established when various courts have agreed that certain conduct is a constitutional violation under facts not distinguishable in a fair way from the facts presented in the case at hand." *Brzowski* v. *Sigler*, No. 17 C 9339, 2021 WL 2529569, at *7 (N.D. Ill. June 21, 2021) (quoting *Figgs*, 829 F.3d at

14

905). While clearly established law does not require a directly on-point case, "precedent must have placed the … constitutional question beyond debate." *Campbell* v. *Kallas*, 936 F.3d 536, 545 (7th Cir. 2019) (quoting *White* v. *Pauly*, 580 U.S. 73, 79 (2017)). The contours of the constitutional right must be "sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Doe* v. *Gray*, 75 F.4th 710, 716-17 (7th Cir. 2023).

To determine whether an alleged constitutional violation is clearly established, the court first looks at binding Supreme Court precedent and then to Seventh Circuit precedent. *Reed*, 906 F.3d at 547. If there is no controlling precedent, the court expands its survey to include "all relevant caselaw in order to determine 'whether there was such a clear trend in the caselaw that we can say with fair assurance that the recognition of the right by a controlling precedent was merely a question of time.'" *Id.* (quoting *Jacobs v. City of Chicago*, 215 F.3d 758, 767 (7th Cir. 2000)). The plaintiff bears the burden of demonstrating that a right was clearly established at the time the alleged violation occurred. *Green* v. *Newport*, 868 F.3d 629, 633 (7th Cir. 2017).

Franco relies primarily on *Figgs* v. *Dawson*, 829 F.3d at 905. In *Figgs*, the plaintiff complained of over-detention, asserting that his release date was miscalculated based on the falsehood that he was on MSR when he committed the offense for which he was serving his sentence. *Id.* at 904. The Seventh Circuit vacated the district court's grant of summary judgment for the defendant prison records official. *Id.* at 905. Even though the records official investigated the complaint, the court reasoned, her investigation was "so ineffectual that it rose to the level of criminal recklessness and thus constituted deliberate indifference." *Id.* The court concluded, "it was clearly established … that the failure to investigate a claim that an inmate is being held

15

longer than the lawful term of his sentence violates the Eighth Amendment if it is the result of indifference." *Id.* at 906.

As in *Figgs*, Franco alleges that IDOC Officials failed to investigate effectively his complaints that he was being held beyond his lawful release date, even though they were aware that his sentence may have been miscalculated. (Dkt. 16 ¶¶ 23-33.) This brings Franco's allegations squarely within the reach of Seventh Circuit precedent.

IDOC Officials contend that *Figgs* does not clearly establish a constitutional violation because "it does not address the specific situation here involving conflicts between sentencing orders and state statutory requirements." (Dkt. 45 ¶ 32.) They further argue that "there is no clearly established law that would put Defendants on notice that applying a statutorily-correct MSR term … violates a prisoner's Eighth Amendment right." (*Id.* ¶ 24.) The court rejects this overly narrow reading.

While the court must not "define clearly established law at a high level of generality," *Reed*, 906 F.3d at 548 (quotation omitted), "the very action in question need not have previously been held unlawful for a public official to have reasonable notice of the illegality of some action." *Figgs*, 829 F.3d at 906 (quotation omitted). Distinguishing the matter based on a specific sentencing error ignores the "'broader deficiencies' with the course of action, or inaction, [Franco] alleges that the defendants took." *McGlone*, 670 F. Supp. 3d at 657 (denying motion to dismiss deliberate indifference claim for over-detention against prison officials on qualified immunity grounds) (quoting *Figgs*, 829 F.3d at 906). Franco alleges "that he put the defendants on notice of the illegality of his continued incarceration but they did nothing to investigate this." *Id.* This is sufficiently analogous to *Figgs*.[11] Franco therefore alleges the violation of a clearly

---

[11] IDOC Officials urge the court to "be mindful" that "Supreme Court precedent takes precedence over circuit court decisions," and instruct the court to "exercise caution" in applying *Figgs* to the instant case because

established constitutional right of which IDOC Officials reasonably should have known. The court denies summary judgment on qualified immunity grounds.[12]

### III. Deliberate Indifference

The court finds, having concluded that IDOC Officials are not entitled to qualified immunity, that liability rests on whether any of the defendants was deliberately indifferent to Franco's constitutional rights. If, as alleged, they received Franco's complaints and did nothing in response, a reasonable jury could infer that they were deliberately indifferent. But these facts are in dispute. The defendants neither admit nor deny that Franco informed them of the miscalculation (Dkt. 26 ¶¶ 24-26, 29, 32); they deny that they failed to investigate (*id.* ¶¶ 27, 31, 33); and they deny they deprived Franco of his Eighth Amendment rights. (*Id.* ¶ 50.) In addition, the scope of each defendant's responsibilities may affect the conclusion on indifference. As such, the case must proceed to discovery on this issue.

### **CONCLUSION AND ORDER**

For the foregoing reasons, the motion for summary judgment (dkt. 31) is denied. The parties shall submit a proposed scheduling order on or before December 20, 2024.

Date: December 4, 2024

U.S. District Judge Joan H. Lefkow

---

"the Court often corrects lower courts when they wrongly subject individual officers to liability." (Dkt. 45 ¶ 33) (quoting *City and County of San Francisco, Calif.* v. *Sheehan*, 575 U.S. 600, 611 n.3 (2015)). The court has carefully evaluated the relevant precedent and does not need to be reminded of the potential for appellate review.

[12] IDOC Officials also argue that "prison officials are permitted to rely upon 'a reasonable interpretation of a state statute,'" which "directly supports qualified immunity." (Dkt. 45 ¶ 28) (quoting *Armato*, 766 F.3d at 721). The *Armato* court, however, relied on specific facts demonstrating reasonableness. *Id.* (affirming denial of deliberate indifference claim because defendants "testified that they believed releasing [the plaintiff] without a term of MSR was contrary to state law," one defendant expressed this concern to colleagues, and an IDOC attorney informed defendants that he believed that the plaintiff could not be sentenced without an MSR term). Franco does not allege any such facts. At this pre-discovery stage, the court accepts his allegations as true. *Crawford-El*, 523 U.S. at 598.